Frederick A. Tecce (admitted *pro hac vice*)
Email:  ftecce@mcshea-tecce.com
McSHEA \ TECCE, P.C.
The Bell Atlantic Tower - 28th Floor
1717 Arch Street
Philadelphia, Pennsylvania 19103
Telephone: 215-599-0800
Facsimile:   215-599-0888

Jason Pauls (proceeding *pro hac vice*)
Email:  jason.pauls@qg.com
Quad/Tech, Inc.
N63 W23075 State Highway 74
Sussex, WI 53089-2827
Telephone:  414-566-4408
Facsimile:  414-566-2011

Marc N. Bernstein (CA SBN 145837)
Email:  mbernstein@blgrp.com
Alice C. Garber (CA SBN 202854)
Email:  agarber@blgrp.com
THE BERNSTEIN LAW GROUP, P.C.
555 Montgomery Street, Suite 1650
San Francisco, California  94111
Telephone:       415-765-6633
Facsimile:       415-283-4804

Attorneys for Plaintiff Quad/Tech Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| QUAD/TECH INC., a Wisconsin Corp., | Civil Action No.:  CV 10-2243 CRB |
| Plaintiff, | |
| v. | **QUAD/TECH INC.'S OPPOSITION TO DEFENDANT QIPC-NA'S MOTION TO DISMISS OR TRANSFER** |
| Q.I. PRESS CONTROLS B.V. of The Netherlands, AND | |
| Q.I PRESS CONTROLS NORTH AMERICA LTD., INC., a Rhode Island Corp., | Date: November 5, 2010 |
| Defendants. | Time: 10:00 a.m. |
| | Dept.: Courtroom 8, 19th Floor |
| | Judge: Honorable Charles R. Breyer |

1

# TABLE OF CONTENTS

**Page**

2

I.   Background ....................................................................................................... 1

3

II.   Argument .......................................................................................................... 1

4

   A.   The "Doctrine of Claim Splitting" Does Not Apply to This Case. ................... 2

5

     1.   The Rule Against "Claim Splitting" Is To Prevent Duplicative Claims....................... 2

6

     2.   The Rule Against Claim Splitting Does Not Apply to a New Patent. ........................... 2

7

     3.   The Rule Against Claim Splitting Does Not Apply to a New Product....................... 3

8

     4.   The Denial of Quad/Tech's Motion to Amend Does Not Change the Result. .............. 5

9

   B.   The "First-to-File" Rule Does Not Mandate Dismissal of This Case. ............................ 8

10

     1.   The "First-to-File" Rule Is Meant To Eliminate Duplicative Cases Unlike This Case. 8

11

     2.   There Is Not a Substantial Overlap of Issues Between the Two Suits. ........................ 9

12

   C.   This Case Should Not Be Transferred to Pennsylvania. .................................................. 10

13

     1.   The Court Cannot Transfer Because This Case Could Not Have Been Brought in

14

Pennsylvania. ...................................................................................................... 10

15

     2.   The Factors Do Not Weigh in Favor of Transfer........................................................ 11

16

III.   Conclusion. ...................................................................................................... 15

17

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITES

2
**Page**

3
**Cases**

*Abbey v. Mercedes Benz of N. Am., Inc.*,
   138 Fed. Appx. 304 (Fed. Cir. 2005) ................................................................. 5

4
*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
   No. 06-cv-514, 2007 WL 2892707 (D. Del. Sept. 30, 2007) ............................... 6

5
*ACC Climate Control v. Bergstrom, Inc.*,
   No. 07-cv-125, 2010 WL 746750 (N.D. Ind. Mar. 2, 2010) ............................... 6

6
*Acumed LLC v. Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008) ............................................................... *passim*

7
*Adams v. California Dept. of Health Servs.*,
   487 F.3d 684 (9th Cir. 2007) ........................................................................ 2, 7

8
*Adoma v. University of Phoenix, Inc.*,
   __ F. Supp. 2d __, 2010 WL 1797263 (E.D. Cal. May 3, 2010) ...................... 12

9
*Alltrade, Inc. v. Uniweld Products, Inc.*,
   946 F.2d 622 (9th Cir. 1991) ............................................................................ 8

10
*American Stock Exch., LLC v. Mopex, Inc.*,
   215 F.R.D. 87 (S.D.N.Y. 2002) ....................................................................... 7

11
*Bayer Schera Pharma AG v. Sandoz, Inc.*,
   No. 08-cv-3710, 2009 WL 440381 (S.D.N.Y. Feb. 18, 2009) ........................ 10

12
*Biogenex Labs, Inc. v. Ventana Med. Sys., Inc.*,
   No. C-05-860-JF, 2005 WL 1869342 (N.D. Cal. Aug. 5, 2005) ................... 6, 7

13
*Black & Decker, Inc. v. Robert Bosch Tool Corp.*,
   500 F. Supp. 2d 864 (N.D. Ill. 2007) ............................................................... 7

14
*Candela Corp. v. Palomar Med. Techs., Inc.*,
   No. 06-cv-277, 2007 WL 738615 (E.D. Tex. Feb. 22, 2007) .......................... 14

15
*Comair Rotron, Inc. v. Nippon Densan Corp.*,
   49 F.3d 1535 (Fed. Cir. 1995) ......................................................................... 3

16
*Commercial Lighting Prods., Inc. v. United States Dist. Court*,
   537 F.2d 1078 (9th Cir. 1976) ....................................................................... 10

17
*ConnecTel LLC v. Cisco Sys., Inc.*,
   No. 04-cv-396, 2005 WL 366966 (E.D. Tex. Feb. 16, 2005) .......................... 15

18
*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*,
   472 F. Supp. 2d 1183 (S.D. Cal. 2007) ........................................................... 12

19
*Cummins-Allison Corp. v. Glory Ltd.*,
   No. 03-cv-358, 2004 WL 1635534 (E.D. Tex. May 26, 2004) .......... 6, 8, 9, 14

20
*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) .......................................................................... 11

21
*Digby Adler Group LLC v. Image Rent A Car, Inc.*,
   No. 10-cv-617, 2010 WL 2867134 (N.D. Cal. Jul. 20, 2010) ......................... 13

22
*Document Gener. Corp. v. Allscripts, LLC*,
   No. 08-cv-479, 2009 WL 2824741 (E.D. Tex. Aug. 27, 2009) ......................... 9

23
*Durney v. WaveCrest Labs., LLC*,
   441 F. Supp. 2d 1055 (N.D. Cal. 2005) ............................................................ 7

24
*Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*,
   No. 09-cv-580, 2009 WL 3333933 (D. Del. Oct. 15, 2009) ........................... 15

25
*Everpure, LLC v. Selecto, Inc.*,
   No. 09-cv-2844, 2010 WL 480970 (C.D. Cal. Feb. 3, 2010) .......................... 14

26
*Florens Container v. Cho Yang Shipping*,
   245 F. Supp. 2d 1086 (N.D. Cal. 2002) ...................................................... 11, 12

27
*Forte Capital Partners v. Harris Cramer*,
   No. 07-cv-1237, 2007 WL 1430052 (N.D. Cal. May 17, 2007) ...................... 11

28

ii

*Foster v. Hallco Mfg. Co.,*
  947 F.2d 469 (Fed. Cir. 1991) ................................................................................ 4, 5
*Garmin Ltd. v. TomTom, Inc.,*
  No. 06-cv-338, 2007 WL 708587 (E.D. Tex. Mar. 5, 2007) .................................... 15
*Hajjar v. Blue Cross & Blue Shield of Texas,*
  No. 09-cv-362, 2009 WL 2902482 (C.D. Cal. Sept. 10, 2009) ................................ 13
*Hoffman v. Blaski,*
  363 U.S. 335 (1960). ........................................................................................... 10, 11
*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.,*
  544 F. Supp. 2d 949 (N.D. Cal. 2008) ........................................................................ 9
*J2 Global Communs., Inc. v. Protus IP Solutions, Inc.,*
  No. 08-cv-211, 262, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008)........................... 15
*Kearns v. General Motors Corp.,*
  94 F.3d 1553 (Fed. Cir. 1996)..................................................................................... 3
*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
  342 U.S. 180 (1952). .................................................................................................. 9
*Mars Inc. v. Nippon Conlux Kabushiki-Kaisha,*
  58 F.3d 616 (Fed. Cir. 1995).................................................................................... 2
*National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.,*
  357 F.3d 1319 (Fed. Cir. 2004).................................................................................. 5
*Nice Sys., Inc. v. Witness Sys., Inc.,*
  No. 06-cv-311, 2006 WL 2946179 (D. Del. Oct. 12, 2006) .................................... 15
*Nokia Corp. v. Buca, Inc.,*
  No. 01-cv-2313, 2002 WL 1461913 (N.D. Tex. Jul. 2, 2002) ................................ 14
*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
  678 F.2d 93 (9th Cir. 1982)........................................................................................ 8
*Pacific Car and Foundry Co. v. Pence,*
  403 F.2d 949 (9th Cir. 1968)..................................................................................... 14
*Rosco, Inc. v. Mirror Lite Co.,*
  304 F.3d 1373 (Fed. Cir. 2002)................................................................................... 5
*Sandisk Corp. v. ITE Techs., Inc.,*
  No. 07-cv-605& 607, 2010 WL 1410728 (W.D. Wis. Apr. 2, 2010) ........................ 5
*SciMed Life Sys. v. Advanced Cardio. Sys., Inc.,*
  51 U.S.P.Q. 2d 1221 (N.D. Cal. 1999)..................................................................... 2, 3
*Sec. Investor Protection Corp. v. Vigman,*
  764 F.2d 1309 (9th Cir. 1985).................................................................................. 12
*Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.,*
  329 F. Supp. 2d 574 (D.Md. 2004) ............................................................................ 7
*Single Chip Sys. Corp. Intermec IP Corp.,*
  495 F. Supp. 2d 1052 (S.D. Cal. 2007)....................................................................... 7
*SmithKline Beecham Corp. v. Geneva Pharms., Inc.,*
  No. 99-cv-2926, 2000 WL 217642 (E.D.Pa. Feb. 11, 2000) .................................. 15
*Trujillo v. GT USA, Inc.,*
  No. 09-cv-5179, 2010 WL 809505 (N.D. Cal. Mar. 5, 2010)................................. 12
*Walton v. Eaton Corp.,*
  563 F.2d 66 (3d Cir. 1977)......................................................................................... 7
*Western Sys., Inc. v. Ulloa,*
  958 F.2d 864 (9th Cir. 1992)...................................................................................... 7

**Statutes**
28 U.S.C. § 1404(a) ...................................................................................... 2, 10, 11
35 U.S.C. § 282 ............................................................................................................. 5

## SUMMARY OF ARGUMENT

**This Case Is Not Similar to, Duplicative of, or Redundant with the Pennsylvania Case.**

- This patent case involves a different product, a color control product called "IDS," than that at issue between these parties in the case pending in the Eastern District of Pennsylvania, a register control product called "mRC." *Quad/Tech, Inc. v. Q.I. Press Controls B.V., et al.*, No. 09-2561-ER, U.S.D.C., E.D.Pa. ("Pennsylvania Case").

- This case involves a wholly different patent, U.S. Patent No. 7,032,508 ("the '508 Patent"), that is not at issue in the Pennsylvania Case.

- This case involves entirely different claims of a second patent, U.S. Patent No. 5,412,577 ("the '577 Patent"), than those claims asserted in the Pennsylvania Case.


**Despite These Critical Distinctions, Defendant Q.I. Press Control ("QI") Has Moved To Dismiss Quad/Tech Inc.'s Complaint Under Numerous Unsupportable Theories.**

- First, QI erroneously argues that this case impermissibly splits a claim asserted in a prior case between the parties, the Pennsylvania Case.

  - The rule against claim splitting prevents parties from splitting a single cause of action into separate grounds of recovery and asserting the separate grounds in successive lawsuits. *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).

  - The rule against claim splitting does not apply when the two cases involve different products and different patents. *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555-56 (Fed. Cir. 1996); *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008).

  - This case involves accusations against defendants' color control product, the Intelligent Density Control System ("IDS"). The Pennsylvania Case involves accusations against defendants' register control products, the mRC product. Different products at issue in the two cases give rise to separate causes of action. The Federal Circuit is clear on this point: "[T]he sale of one product constitutes a different

iv

transaction from the sale of another product, even if both products infringe the same patent." *Acumed*, 525 F.3d at 1324 (*citing Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir. 1991)).

    o   The case involves an entirely different patent NOT asserted in the Pennsylvania Case, the '508 Patent.

    o   Although this case also involves a patent asserted in the Pennsylvania Case, the '577 Patent, the claims asserted in this case are separate and distinct from the claims asserted in Pennsylvania.  The law is clear on this point: "Each patent asserted raises an independent and distinct cause of action." *Kearns.,* 94 F.3d at 1555-56 (Fed. Cir. 1996).

    o   Critically, Quad/Tech sought to amend its complaint in the Pennsylvania Case to include the product now at issue in this case.  QI objected to that motion.  Having done so, QI cannot now be heard to seek a transfer there. *Cummins-Allison Corp. v. Glory Ltd.*, No. 03-cv-358, 2004 WL 1635534, at *3 (E.D. Tex. May 26, 2004) (motion to transfer denied in subsequent action where defendant previously object to motion to amend).

- Second, QI erroneously argues that this case and the Pennsylvania Case sufficiently overlap such that this case should be dismissed under the "first-to-file" rule in favor of the first-filed Pennsylvania Case.

    o   The "first-to-file" rule does not apply here.

    o   Under the first-to-file rule, the Court may—at its discretion—transfer, stay, or dismiss an action when a similar action has been filed previously in another district. *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625-26 (9th Cir. 1991).

    o   In determining whether the "first-to-file" rule applies, this Court must determine whether there is substantial overlap between the two suits. *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 959-60 (N.D.Cal. 2008).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- o   As to the product at issue in this case, this case is the "first-filed case" in that the product at issue here was NOT at issue in Philadelphia.

- o   As to the first patent at issue in this case, the '508 Patent, this is the "first-filed case" because that patent was NOT asserted in the Philadelphia Case.

- o   Given that this case involves a different product, a different patent, and different claims of a second patent, there is no overlap.  *See Cummins-Allison Corp.*, 2004 WL 1635534, at *3.

- • As a third argument, QI posits that this case should be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).  The transfer statute does not permit moving this case to Pennsylvania, and analysis of the relevant transfer factors reveals that transfer is inappropriate.

  - o   QI had its chance to have this product, the IDS, be part of the Pennsylvania Case, but they opposed Quad/Tech's motion to amend.

  - o   Quad/Tech could not have brought this case against QI in Pennsylvania because there is neither general nor specific jurisdiction over defendants there for purposes of this action.  QI's consent to submit to jurisdiction in Pennsylvania does not satisfy this requirement of section 1404(a).  *Hoffman v. Blaski,* 363 U.S. 335, 342-44 (1960).

  - o   QI further fails to prove that a transfer of this case would be warranted under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.  QI has the burden to prove that the balance of the conveniences and justice factors "tip strongly" in favor of transfer of venue.  *Florens Container v. Cho Yang Shipping,* 245 F. Supp. 2d 1086, 1091-92 (N.D. Cal. 2002).  QI failed to present affidavits or declarations to establish the facts supporting transfer, which is fatal to its transfer request.  Finally, analysis of each of the private and public factors considered in determining whether transfer is appropriate weighs strongly against transfer.

vi

1

## I.    BACKGROUND

2    Mass-printing of color newspapers, magazines, and other mass-market materials requires

3    precise control of the images being printed, including control of ink thickness and density to get

4    the right-looking colors ("color control") and positioning different colored ink-dots in the right

5    locations relative to each other ("registration" or "register control").  Plaintiff Quad/Tech Inc.

6    ("Quad/Tech") is an industry leader in control systems and equipment, including both color

7    control and register control systems.  (First Amended Complaint for Patent Infringement ("FAC")

8    at ¶ 6.)  Quad/Tech has developed significant improvements in these areas, and holds a number of

9    patents on this technology, including two at issue here:  U.S. Patent No. 5,412,577 "Color

10   Registration System For a Printing Press" ("the '577 Patent"), and U.S. Patent No. 7,032,508

11   "Printing Press" ("the '508 Patent").  (*Id.* at ¶¶ 13, 17 & 22.)

12    In the mid-1990s, two former Quad/Tech employees formed a competing company, Q.I.

13   Press Controls ("QI"), to market technology developed while they were still at Quad/Tech.  (*Id.* at

14   ¶¶ 18-20.)  In 2009, Quad/Tech sued QI in the Eastern District of Pennsylvania for infringing

15   certain claims of Quad/Tech's '577 Patent, and for unfair competition and violations of the

16   Lanham Act (the "Pennsylvania Case").  (Declaration of Marc David Peters, Exh. B.)  Quad/Tech

17   accused QI's register control product, called the "mRC System" ("mRC"), of patent infringement,

18   and sought an injunction against QI.  (*Id.* at pp. 12-14.)  The injunction was denied, and

19   Quad/Tech has appealed this denial.  The entire district court case has been stayed pending

20   appeal.  (Peters Decl., Exh. A (Docket Entry Nos. 100 & 110).)

21    In this suit, Quad/Tech accuses a *different QI product*, a color control product—Intelligent

22   Density Control System ("IDS")—of infringing a *different patent* not at issue in the Pennsylvania

23   Case—the '508 Patent.  Quad/Tech also charges that QI's IDS product infringes, *different* claims

24   of the '577 Patent not at issue in the Pennsylvania Case.  (Declaration of Frederick A. Tecce at

25   ¶ 6.)

## II.    ARGUMENT

27    QI argues that Quad/Tech's complaint should be dismissed in its entirety under the

28   doctrine of "claim splitting."  This doctrine, however, does not apply to this case because it

1

1   involves a different product, a new patent and different patent claims.  QI also argues that the case

2   should be dismissed under the "first-to-file" rule.  This rule is similarly inapplicable here.

3   Finally, QI argues that the case should be transferred to Pennsylvania if the Court does not

4   dismiss it.  But properly analyzed, the 28 U.S.C. § 1404(a) transfer factors preclude transfer.

5   **A.      The "Doctrine of Claim Splitting" Does Not Apply to This Case.**

6   **1.      The Rule Against "Claim Splitting" Is To Prevent Duplicative Claims.**

7   The rule against claim splitting prevents parties from "split[ting] a cause of action into

8   separate grounds of recovery and rais[ing] the separate grounds in successive lawsuits . . . ."

9   *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).  Akin to (but

10  not) *res judicata*, the claim-splitting rule "borrow[s] from the test for claim preclusion" in

11  determining whether a subsequent suit is duplicative of a prior one.  *Adams v. California Dept. of*

12  *Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007).  The court is to determine "whether the

13  causes of action and relief sought, as well as the parties or privies to the action, are the same."  *Id.*

14  at 689.

15  Generally, courts apply regional circuit law in evaluating this issue.  *See, e.g., Acumed*

16  *LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008); *Mars Inc.*, 58 F.3d at 618.  However,

17  in patent infringement cases, the U.S. Court of Appeals for the Federal Circuit applies its own law

18  to determine whether the two causes of action are the same.  *See Acumed*, 525 F.3d at 1323-24.

19  Regional circuit law then controls other issues not unique to patent law.  *See id.*; *Mars Inc.*, 58

20  F.3d at 618-19 (applying Ninth Circuit law in patent infringement case to determine whether

21  parties were in privity); *SciMed Life Sys. v. Advanced Cardio. Sys., Inc.*, 51 U.S.P.Q. 2d 1221,

22  1223 (N.D. Cal. 1999) (distinguishing *Mars Inc.* as not turning on core question sounding in

23  patent law).

24  **2.      The Rule Against Claim Splitting Does Not Apply to a New Patent.**

25  In this action, Quad/Tech has asserted that the defendants' color density control system

26  infringes certain claims of the '508 Patent.  (FAC at ¶ 36.)  The '508 Patent was never asserted in

27  the Pennsylvania case.  (*See* Peters Decl., Exh. B at *passim*.)  QI argues that the '508 Patent

28  infringement claim in this case "share[s] a common factual basis" with the '577 Patent

2

infringement claim in the Pennsylvania Case, and thus that the claim-splitting doctrine bars Quad/Tech's assertion of the '508 Patent here. (Motion at 6:17-22.) But QI misapplies the law and misstates the facts.

Quad/Tech's claim here under the '508 Patent is a wholly different cause of action than the claim it asserted in Pennsylvania under the '577 Patent. "By statutory and common law, each patent establishes an independent and distinct property right. . . Each patent asserted raises an independent and distinct cause of action." *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555-56 (Fed. Cir. 1996).[1] "Separate patents describe separate and distinct [inventions] and it can not be presumed that related patents rise and fall together." *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1539 (Fed. Cir. 1995); *see also SciMed Life Sys.*, 51 U.S.P.Q. 2d at 1222-23 (motion to dismiss denied in second litigation involving same parties and products but involving different, though closely related, patent than that asserted in earlier suit). Accordingly, QI's motion to dismiss Quad/Tech's claim for infringement of the '508 Patent in this case must be denied.

### 3.    The Rule Against Claim Splitting Does Not Apply to a New Product.

The doctrine of claim-splitting is inapplicable not just because of the new patent, but also because of the newly-accused product. In the present case, Quad/Tech accuses the defendants' color control product, the Intelligent Density Control System ("IDS"). (FAC at ¶ 29.) In the Pennsylvania Case, Quad/Tech accused the defendants' register control products, namely the mRC System ("mRC") (Pennsylvania FAC at ¶ 50.) Different products are thus at issue in the two cases.[2]

---

[1] In *Kearns*, Kearns sued General Motors for infringement of twenty-one patents, five of which had been previously asserted against GM and dismissed with prejudice. The district court dismissed the subsequent suit in its entirety, holding that all the patents should have been asserted in the first litigation. *Id.* at 1554. The Federal Circuit vacated the dismissal as to the sixteen patents that Kearns asserted for the first time in the second suit. *Id.* at 1555-56. The court reasoned: "When . . . bar[ring] causes of action that were not before the court in [a] prior action, due process of law and the interest of justice require cautious restraint." *Id.* at 1556.

[2] In the Pennsylvania Case, the court ordered a stay solely due to Quad/Tech's appeal of preliminary injunction rulings about the defendants' mRC register control product. That product is not at issue here. As such, neither the pending appeal nor the facts underlying it will have any

(Footnote continues on next page.)

3

In weighing claim preclusion, both the Federal Circuit and our Circuit follow the "transactional" approach. *Acumed*, 525 F.3d at 1323-24. Under this approach, the sale of one product constitutes a different transaction from the sale of another product, even if both products infringe the same patent. *Acumed*, 525 F.3d at 1324 (citing *Foster v. Hallco Mfg. Co.*, 947 F.2d 469 (Fed. Cir. 1991)).

*Acumed* held that claim preclusion does not bar patentees from asserting infringement of the same patent in successive lawsuits against different products, so long as the products are not "essentially the same." *Id.* at 1323-24. "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Id.* at 1324 (quoting *Foster*, 947 F.2d at 480).[3] Importantly, in *Acumed*, the Federal Circuit expressly rejected the notion that if during the course of a first suit the patentee had knowledge of another product and "could have" brought it into the first suit, claim preclusion would apply to bar a second suit involving that product. 525 F.3d at 1325-26.

The IDS color density control system at issue here is a completely different product than the mRC register control device at issue in the Pennsylvania Case. The IDS and mRC systems are completely different systems sold by QI. The functionality of each of the systems is different. The IDS is a color control system used to control ink thickness and density to get the right looking colors. On the other hand, the mRC system is a register control system for positioning different colored ink-dots in the right locations relative to each other. (*See* Tecce Decl. at ¶ 7.) QI presents no evidence, nor can it, that the differences between these two devices are "merely colorable" or "unrelated to the limitations in the claims" of the '577 Patent at issue. QI simply

---

(Footnote continued from previous page.)
impact on this case. Notably, the ultimate construction of the claim term "image" (the only term construed in the Pennsylvania Case) has no bearing on this case. (Tecce Decl. at ¶ 9.)

[3] In *Acumed*, Acumed sued Stryker based on Stryker's sale of a nail for fixing bone fractures, the "T2 Long." The district court dismissed Acumed's suit, finding it was precluded by a final judgment in an earlier suit between the same parties involving a claim for infringement of the same patent by a shorter nail for fixing bone fractures known as the "T2 PHN." *Acumed*, 525 F.3d at 1322. The Federal Circuit reversed the district court's dismissal of the T2 Long suit, holding that Acumed need not have litigated the T2 Long in the earlier suit because it was not "essentially the same" as the T2 PHN. *Id.* at 1327.

4

states that the IDS color density control system device and the mRC register control device "are typically sold together." (Motion at 6:19-20). Even if true, this allegation fails to satisfy QI's burden to prove that the two devices are essentially the same. *Acumed*, 325 F.3d at 1324 (the party asserting the preclusion argument "has the burden of showing that the accused devices are essentially the same" (citing *Foster*, 947 F.2d at 480)).[4] QI's motion to dismiss Quad/Tech's claim for infringement of the '577 Patent in this case must therefore be denied.

### 4. The Denial of Quad/Tech's Motion to Amend Does Not Change the Result.

QI makes much of the Pennsylvania court's denial of Quad/Tech's Motion to Amend its complaint to add the defendants' IDS color density control system to its claims of infringement of the '577 Patent. (Motion at 4:16-25; 7:9-8:12.) But far from establishing the impermissibility of Quad/Tech's claims in this case, the manner in which courts view such denials only underscores the propriety of the present case.

Patent holders are allowed to assert patents in subsequent infringement suits following rejection of an amended complaint seeking to raise those patents in a prior suit. For example, in *Abbey v. Mercedes Benz of N. Am., Inc.*, the Federal Circuit found that a prior amended complaint adding a third patent, which was dismissed as moot, did not preclude assertion of the third patent in a subsequent suit between the same parties, though the first two patents were precluded. 138 Fed. Appx. 304, 306-07 (Fed. Cir. 2005); *see also Sandisk Corp. v. ITE Techs., Inc.*, No. 07-cv-605 & 607, 2010 WL 1410728, at *1-*2 (W.D. Wis. Apr. 2, 2010) (motion for leave to add continuation patents denied because patentee was "free to file a new lawsuit with respect to the

---

[4] QI attempts to distract the Court by arguing that it will have common affirmative defenses in the two cases. (Motion at 7:1-8.) But its defenses are of no moment in determining whether two cases involve the same cause of action. *See Foster*, 947 F.2d at 478-79. Moreover, QI's arguments that the '577 Patent claims are invalid in the Pennsylvania Case will necessarily be different than its invalidity defense here. This case involves different claims. (Tecce Decl. ¶ 6.) Since validity is determined strictly on an individual claim-by-claim basis, whether the claims relating to registration are found invalid in the Pennsylvania Case is simply of no consequence here. *See* 35 U.S.C. § 282; *National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.,* 357 F.3d 1319, 1334 (Fed. Cir. 2004) ("A validity analysis must be conducted on a claim-by-claim basis."); *Rosco, Inc. v. Mirror Lite Co.,* 304 F.3d 1373, 1379 (Fed. Cir. 2002) ("When determining the validity of the claims of a patent, each claim must be separately considered[.]").

5

1  new claims"); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, No. 06-cv-514, 2007 WL 2892707, at

2  *3 (D. Del. Sept. 30, 2007) (motion to strike patentee's complaint in second case denied as there

3  was nothing in the first court's denial of motion to add patents that "could be construed as

4  preventing Abbott from seeking relief by filing a new complaint.") (applying Federal Circuit

5  law); *Cummins-Allison Corp. v. Glory Ltd.*, No. 03-cv-358, 2004 WL 1635534, at *3 (E.D. Tex.

6  May 26, 2004) (motion to transfer denied in subsequent action involving new patents, finding the

7  judge in prior action "exercised his discretion to not have new patents joined with the existing

8  litigation and felt they should be the subject of a new cause of action").  *Cf. ACC Climate Control*

9  *v. Bergstrom, Inc.*, No. 07-cv-125, 2010 WL 746750, *2-3 (N.D. Ind. Mar. 2, 2010) (patentee's

10  motion for leave to add new patents denied because "the Court [was] not aware of any legal

11  authority that would mandate the patents be tried together because they are related.") (applying

12  Federal Circuit law).  The denial of Quad/Tech's Motion to Amend similarly does not foreclose

13  its right to bring those claims here.

14       The Pennsylvania court's order simply stated: "IT IS FURTHER ORDERED that

15  Plaintiff's motion for leave to file a second amended complaint (doc. no. 92) is DENIED."

16  (Tecce Decl., Exh. A.)  No reasoning or explanation for the denial was provided, nor did the order

17  indicate that the denial was "with prejudice."  (*See id.*)  This perfunctory denial in Pennsylvania

18  does not bar Quad/Tech from asserting here that the defendants' IDS system infringes the '577

19  Patent.

20       The cases QI cites do not suggest a different result.  Contrary to QI's assertion, this case is

21  *not* directly analogous to *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*  (Motion at 7.)  In

22  *Biogenex*, the plaintiff asserted certain patent claims against certain products and then sought to

23  amend its infringement contentions to add a new claim against those products.  No. C-05-860-JF,

24  2005 WL 1869342, at *1 (N.D. Cal. Aug. 5, 2005).  The court denied the motion.  *Id.*  The

25  plaintiff then filed a second suit against the same defendant, asserting the extra claim it was not

26  permitted to add to the first suit.  *Id.*  The second suit was dismissed as improper claim splitting.

27  *Id.* at *3.

28

6

*Biogenex* is not this case.  The additional infringement contentions the *Biogenex* plaintiff sought to add in its first suit targeted the *very same products* it was already litigating in that first case.  *Id.* at *2.  The amendment was denied because of the plaintiff's delay.  *Id.* at *1.  The plaintiff's second infringement suit, also involving the *same products*, was dismissed so as not to negate that decision.  *Id.* at *3.  Had a materially different product been at issue, as in this case, the *Biogenex* decision would have run afoul of *Acumed.  Cf.* 325 F.3d at 1324-26 (preclusion arises only where the accused devices are essentially the same).

Here, by contrast, Quad/Tech sought to amend its complaint in Pennsylvania to add a *different* product, one that was not already being litigated in that action.  (Peters Decl., Exh. E at ¶ 51.)  That motion to amend was denied without explanation.  (Tecce Decl., Exh. A.)  To assign that denial preclusive effect here would run afoul of *Acumed.  See* 325 F.3d at 1324-26.

Nor are QI's other cases helpful to its cause.  *American Stock Exch., LLC v. Mopex, Inc.* involved a patent plaintiff who, after the close of fact discovery, sought to add an additional claim to its infringement allegations against the *same* accused exchange-traded funds.  215 F.R.D. 87, 92 & n.2 (S.D.N.Y. 2002).  *Single Chip Sys. Corp. v. Intermec IP Corp.* also involved a subsequent suit accusing the *same product* of infringement.  495 F. Supp. 2d 1052, 1062-62 (S.D. Cal. 2007).  These cases are inapt in the same way *Biogenex* is.

*Black & Decker, Inc. v. Robert Bosch Tool Corp* is similarly unhelpful to QI.  The court applied *res judicata* to bar a subsequent infringement suit against a different product, relying on the district court decision *Acumed LLC v. Stryker Corporation,* No. 06-C-642-BR, 2006 WL 3253115 (D.Or. Nov. 6, 2006).  *See* 500 F. Supp. 2d 864, 871-72 (N.D. Ill. 2007).  The Federal Circuit has reversed the district court's *Acumed* decision relied on by *Black & Decker, Inc.  See Acumed*, 325 F.3d at 1327.  *Black & Decker, Inc.* is no longer good law on this point.[5]

---

[5] QI's remaining cases—*Adams v. California Dept. of Health Servs.*, 487 F.3d 684 (9th Cir. 2007); *Western Sys., Inc. v. Ulloa*, 958 F.2d 864 (9th Cir. 1992); *Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir. 1977); *Durney v. WaveCrest Labs., LLC*, 441 F. Supp. 2d 1055 (N.D. Cal. 2005); and *Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 329 F. Supp. 2d 574, (D.Md. 2004)—are not patent cases and are inapplicable here in light of *Acumed.*

7

1    Accordingly, as *Acumed* instructs, the denial in Pennsylvania of Quad/Tech's Motion to

2    Amend to add a new product does not preclude it from asserting infringement claims against that

3    product here.  QI's motion must be denied.

4           **B.      The "First-to-File" Rule Does Not Mandate Dismissal of This Case.**

5           QI argues that this suit violates the "first-to-file" rule because "the issues are sufficiently

6    similar" between this case and the first-filed Pennsylvania Case.  (Motion at 9.)  Despite the fact

7    that this case involves a separate patent (the '508 Patent) not asserted in Pennsylvania, separate

8    claims of the '577 Patent not at issue in Pennsylvania, and a separate product not at issue in

9    Pennsylvania, QI urges the Court to dismiss in favor of the stayed Pennsylvania Case.  QI's

10   attempt to shoehorn this case into a "first-to-file" analysis is not successful.

11          **1.      The "First-to-File" Rule Is Meant To Eliminate Duplicative Cases**
             **Unlike This Case.**
12

13          Under the first-to-file rule, the court may—at its discretion—transfer, stay, or dismiss an

14   action when a similar action has filed previously in another district.  *Alltrade, Inc. v. Uniweld*

15   *Products, Inc.,* 946 F.2d 622, 625-26 (9th Cir. 1991).  QI seeks dismissal of this case in its

16   entirety under the rule.  (Motion at 9-10.)  However, as to the accused IDS system and the '508

17   Patent, *this* is the first-filed case, not the Pennsylvania Case.  *See Cummins-Allison*, 2004 WL

18   1635534, at *3 ("The Court finds that this case is the first-filed case and should proceed in this

19   Court.  Although the patents are related and might involve the interpretation of identical claim

20   terms, the patents are different patents than those in suit in the initial Illinois case.")  Moreover,

21   QI argued against amending the Pennsylvania Case to include the IDS product at issue in this

22   case.  (Peters Decl., Ex. A (Docket Entry No. 95).)  QI should now be estopped from arguing that

23   this case should be dismissed as the second-filed case.

24          The "first-to-file" rule is not a rigid or inflexible rule to be mechanically applied.

25   *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).  The decision whether to

26   apply the "first-to-file" rule is discretionary, and involves determinations concerning "[w]ise

27   judicial administration, giving regard to conservation of judicial resources and comprehensive

28   disposition of litigation."  *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183

8

1  (1952).  In determining whether the "first-to-file" rule applies, this Court must determine whether

2  the two pending actions are "so duplicative or involve substantially similar issues that one court

3  should decide the issues[.]"  *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp.

4  2d 949, 959-60 (N.D.Cal. 2008) (citations omitted).  "[T]here must be substantial overlap

5  between the two suits."  *Id.* at 960 (citations and internal quotes omitted).

6  **2.      There Is Not a Substantial Overlap of Issues Between the Two Suits.**

7  QI's argument that the "first-to-file" doctrine mandates dismissal of this case should be

8  rejected.  This action and the Pennsylvania Case do not substantially overlap.  First, the '508

9  Patent is not at issue in the Pennsylvania Case—it was first asserted here.  That fact alone is fatal

10  to QI's argument.  Moreover, that the '577 Patent is at issue in both cases is not dispositive of

11  whether there is overlap.  *See Cummins-Allison*, 2004 WL 1635534, at *3 ("This Court has been

12  involved in cases where the patents and disputed claim terms have been the subject of two

13  different suits pending at the same time.")

14  This case also involves different patent claims with respect to the '577 Patent.  "One way

15  to consider this overlap [in a first-to-file analysis] is by considering the [patent] claims at issue."

16  *Document Gener. Corp. v. Allscripts, LLC*, No. 08-cv-479, 2009 WL 2824741, at *2 (E.D. Tex.

17  Aug. 27, 2009) (first-to-file rule transfer request denied).  Given that a wholly new patent—the

18  '508—is at issue here, completely different claims of the '577 Patent are being asserted, and a

19  different product is being accused of infringement—the IDS—there is little risk of inconsistent

20  rulings or competing claim constructions between this case and the Pennsylvania Case.  Indeed,

21  as noted above, the Pennsylvania court only construed a single claim term—a term that will not

22  be at issue in this case.  (Tecce Decl., ¶ 9.)  The issues in these cases are not "so duplicative . . .

23  that one court should decide [them]."  *Intersearch Worldwide, Ltd.*, 544 F. Supp. 2d at 959-60.

24  Quad/Tech should not be "chained" forever to Pennsylvania simply because it has a patent

25  case pending there on printing technology, especially since that case has been stayed.  *See*

26  *Document Gener. Corp.*, 2009 WL 2824741, at *2 ("Were the Court to rule that it is improper for

27  a Court to consider the specific claims or products at issue, it would chain Plaintiff to S.D. Illinois

28  whenever it asserted a patent in the same family as the '366 Patent.  The Court is unwilling to

9

1    create such a rule, particularly in light of the fact that the S.D. Illinois action is currently stayed.")

2    Quad/Tech was not "judge shopping" when it filed this suit here, as QI contends.  (Motion at

3    10:2.)  This district is where the infringing conduct took place (as explained below).  Quad/Tech

4    did not "set sail" for California; QI brought us here.  Its motion should be denied.

5         **C.**     **This Case Should Not Be Transferred to Pennsylvania.**

6         As a fallback position, QI argues that this case should be transferred to the Eastern District

7    of Pennsylvania "for disposition in conjunction with" the Pennsylvania Case.  (Motion at 11.)

8    The transfer statute, 28 U.S.C. § 1404(a), is inapplicable here, however, because this suit could

9    not have been brought in the Eastern District of Pennsylvania.  In addition, QI fails to

10   demonstrate that the convenience of the parties and witnesses, and the interest of justice, support

11   transfer of this case.

12             **1.**     **The Court Cannot Transfer Because This Case Could Not Have Been**
13                     **Brought in Pennsylvania.**

14        The first consideration in a venue transfer analysis is whether the action could have been

15   brought in the judicial district to which the transfer is sought.  28 U.S.C. § 1404(a).  In

16   considering where an action "might have been brought," for purposes of section 1404(a), the

17   district court must look solely to the state of affairs at "the time of the bringing of the action."

18   *Hoffman v. Blaski*, 363 U.S. 335, 342-43 (1960).  A defendant's consent to submit to jurisdiction

19   of a proposed transferee court after an action is filed will not satisfy section 1404(a).  *Id.* at 342-

20   44; *accord Commercial Lighting Prods., Inc. v. United States Dist. Court*, 537 F.2d 1078, 1079

21   (9th Cir. 1976) (district court erred in transferring action to district where it could not originally

22   have been brought); *Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08-cv-3710, 2009 WL

23   440381, at *4-*6 (S.D.N.Y. Feb. 18, 2009) (transfer denied as accused infringer failed to show

24   that the Nevada court would have had personal jurisdiction over it at the time the present suit

25   commenced).

26        Quad/Tech could not have brought this case against the defendants in Pennsylvania.

27   Pennsylvania has neither general nor specific jurisdiction over either defendant for purposes of

28   this action.  Neither defendant is a Pennsylvania corporation; neither has a Pennsylvania office;

10

and neither transacted a continuous and substantial amount of business in Pennsylvania.  (Tecce Decl. at ¶ 11.)  QI offers no evidence to the contrary.

The events giving rise to the patent infringement claims in this case occurred exclusively in this forum—the sale of the IDS color density control system to Transcontinental in Fremont, California.  (Motion at 6:19-22.)  QI submits no evidence that an IDS was sold in Pennsylvania. That Quad/Tech sought to add the IDS product to the Pennsylvania Case in a motion for leave to amend its complaint, and that the defendants did not object to jurisdiction in their opposition to the motion, does not absolve QI of its burden of demonstrating that jurisdiction existed in Pennsylvania.  *See Hoffman*, 363 U.S. at 344 (in evaluating transfer "it is immaterial that the defendant subsequently makes himself subject, by consent, waiver of venue and personal jurisdiction defenses or otherwise, to the jurisdiction" of the other forum) (internal quotations omitted).

QI thus fails to carry its burden of demonstrating that, aside from any potential consent to suit in the Pennsylvania forum, it would have been subject to jurisdiction in Pennsylvania at the time this suit commenced.  *See id.* at 342-43.  QI's transfer request should be denied for failing to meet this essential element of 28 U.S.C. § 1404(a).

## 2.      The Factors Do Not Weigh in Favor of Transfer.

QI further fails to prove that a transfer of this case would be warranted under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.  A transfer is not appropriate merely to shift the inconvenience from one party to another—the burden is on the party seeking transfer to prove that the balance of the conveniences and justice factors "tip strongly" in favor of transfer of venue.  *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1091-92 (N.D. Cal. 2002); *accord Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  "In order to meet its burden, the moving party must present affidavits or declarations to establish the facts supporting transfer."  *Forte Capital Partners v. Harris Cramer*, No. 07-cv-1237, 2007 WL 1430052, at *2 (N.D. Cal. May 17, 2007). QI fails to meet its burden.

11

1

Plaintiff's Choice of Forum

2 Generally, a plaintiff's choice of forum should not be disturbed. "[U]nder Ninth Circuit

3 law, a plaintiff's choice of forum is accorded substantial weight in proceedings under this section,

4 and courts generally will not transfer an action unless the 'convenience' and 'justice' factors

5 strongly favor venue elsewhere." *Florens Container*, 245 F. Supp. 2d at 1092 (citing *Sec.*

6 *Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)). QI argues that

7 Quad/Tech's choice of forum here is not entitled to deference "because it appears to be a case of

8 forum-shopping." (Motion at 11:1-3.) As set forth above, QI's charge is unfounded.

9 QI is subject to specific jurisdiction in this forum—it sold the accused infringing IDS

10 device here. The center of gravity of the infringing conduct in this case is thus in this forum.

11 These reasons, *not* forum shopping, brought Quad/Tech to this Court. Notably, QI argued against

12 amending the Pennsylvania Case to include the IDS product at issue in this case, and it should

13 now be estopped from trying to move it back to Pennsylvania.

14

Convenience of the Witnesses and the Parties

15 QI names no witnesses and offers no evidence in support of its transfer request. This

16 alone is fatal to its transfer motion. *Adoma v. University of Phoenix, Inc,*, __ F. Supp. 2d __,

17 2010 WL 1797263, at *8 (E.D. Cal. May 3, 2010) ("The party moving for transfer must

18 demonstrate, through affidavits or declarations containing admissible evidence, who the key

19 witnesses will be and what their testimony will generally include."); *accord Florens Container*,

20 245 F. Supp. 2d at 1093. Thus, QI fails to identify any burden this forum presents to non-party

21 witnesses. *Trujillo v. GT USA, Inc.*, No. 09-cv-5179, 2010 WL 809505, at *2 (N.D. Cal. Mar. 5,

22 2010). Indeed, non-party witnesses from QI's Fremont, California customer, Transcontinental are

23 undoubtedly located in this district. Nor does QI assert that any key non-party witness is

24 unavailable for trial as beyond the subpoena power of the Court. *See Costco Wholesale Corp. v.*

25 *Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1194 (S.D. Cal. 2007). Absent affidavits or

26 declarations, QI's statement that appearing in a single district is more convenient than appearing

27 in two (Motion at 11:9-13) is simply conclusory attorney argument and is not due significant

28 weight.

12

QI states that documents have already been produced in Pennsylvania related to the Pennsylvania Case.  (Motion at 11: 13-16.)  It does not, however, say what portion of those documents will be relevant to this action—particularly since the Pennsylvania Case concerned a wholly different product—or whether the documents are so voluminous that shipping them to this forum would cause an undue burden.  Even so, "[g]iven the advances in technology, the ease in access to documents does not weigh heavily in the motion to transfer analysis."  *Digby Adler Group LLC v. Image Rent A Car, Inc.*, No. 10-cv-617, 2010 WL 2867134, at *6 (N.D. Cal. Jul. 20, 2010).

While QI notes that "Pennsylvania is more convenient for a small Rhode Island company than is California" (Motion at 11:15-16), QI does not assert that it is financially unable to defend this case in this forum or that the cost of litigating in this forum is significantly more than in Pennsylvania.  *See Hajjar v. Blue Cross & Blue Shield of Texas*, No. 09-cv-362, 2009 WL 2902482, at *6 (C.D. Cal. Sept. 10, 2009) (transfer denied).  Nor does it mention its larger Dutch parent company, Q.I. Press Controls, B.V., which, although consenting to service in the Pennsylvania Case, is currently avoiding service of process here, and which will be in the case once service is effected.  QI has failed to demonstrate that transfer of this case to Pennsylvania would serve the convenience of the parties or the witnesses.

<u>Public Interest Factors</u>

QI also fails to prove that the balance of the public interest factors strongly favors transfer of venue.  In fact, these factors weigh against transfer:

• The Eastern District of Pennsylvania has a more congested docket than the Northern District of California and has the highest ratio of pending actions per judgeship of all district courts.  (*See* Tecce Decl., Exhs. B & C.)

• Because federal patent law is to be applied in this case, the Pennsylvania court has no greater familiarity with the applicable law, which weighs against transfer.

• QI argues that the time to trial "will be significantly less in the Pennsylvania case, because the preliminary injunction proceedings and extensive discovery have already occurred in Pennsylvania . . . ."  (Motion at 11:22-24.)  This assertion is belied by the defendants' conduct

13

and the procedural posture of the Pennsylvania Case.  The defendants opposed Quad/Tech's

motion to remove the non-patent infringement claims from the stay so that discovery on them

could start.  (Peters Decl., Ex. A (Docket Entry No. 113).)  Accordingly, the unrelated claims for

violation of the Lanham Act, common law unfair competition, and tortious interference with

prospective contracts against the defendants and their Pennsylvania distributor have been stayed.

(*See* Tecce Decl. at ¶ 12.)

　　　　• QI is mistaken that neither forum has a special local interest in the controversy.

(Motion at 11:21-22.)  The sale of infringing products in this district provides this forum both

with a particular interest in this case, and a substantial connection to its subject matter.  These

factors weigh against transfer.  *See Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th

Cir. 1968) (consideration must be given to defendant's business contact with the chosen forum);

*see also Cummins-Allison*, 2004 WL 1635534, at *5 ("the admitted sale of the allegedly

infringing products in the [forum] is an event that is significant and relevant to this action")

(citing *Nokia Corp. v. Buca, Inc.*, No. 01-cv-2313, 2002 WL 1461913, at *2 (N.D. Tex. Jul. 2,

2002) (transfer denied where allegedly infringing products were sold and offered for sale in

forum state even though the products were distributed and sold from the defendant's headquarters

in another state where all of defendant's key witnesses and documents related to the sale of the

products were located)); *Candela Corp. v. Palomar Med. Techs., Inc.*, No. 06-cv-277, 2007 WL

738615, at *5 (E.D. Tex. Feb. 22, 2007) (court found local interest in dispute since some alleged

infringement occurred in the district).

　　　　• Finally, QI's contention that transferring this action to Pennsylvania will result in

judicial economy because "both lawsuits involve many common questions of law and fact" is

baseless.  (Motion at 11:23-25.)  As discussed at length above, this action involves a different

accused system (IDS), a different patent (the '508 Patent), and different claims of the '577 Patent

than the Pennsylvania Case.  Courts routinely deny transfers in such cases.  *See Everpure, LLC v.*

*Selecto, Inc.*, No. 09-cv-2844, 2010 WL 480970, at *3 (C.D. Cal. Feb. 3, 2010) (transfer denied to

accused infringer's home forum where another patent infringement suit was pending between the

parties, even though the patentee was not a California corporation and did not have its

14

headquarters there, because"[t]he mere *similarity* of patents and identity of parties is insufficient to warrant a discretionary transfer") (emphasis in original); *J2 Global Communs., Inc. v. Protus IP Solutions, Inc.*, No. 08-cv-211, 262, 263 & 275, 2008 WL 5378010, at *6 (E.D. Tex. Dec. 23, 2008) (transfer denied where case involved only one of the four patents involved in other cases); *Garmin Ltd. v. TomTom, Inc.*, No. 06-cv-338, 2007 WL 708587, *2–*3 (E.D. Tex. Mar. 5, 2007) (transfer denied to forum where the patentee had filed an infringement suit asserting four other patents); *Ethicon Endo-Surgery, Inc. v. Hologic, Inc.*, No. 09-cv-580, 2009 WL 3333933, at *3 (D. Del. Oct. 15, 2009) (transfer to Ohio denied because present suit involved two different patents and a different accused product); *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-cv-311, 2006 WL 2946179, at *3 (D. Del. Oct. 12, 2006) (transfer denied despite three other pending suits by the patentee in Georgia which had some overlap in parties, products and technologies); *ConnecTel LLC v. Cisco Sys., Inc.*, No. 04-cv-396, 2005 WL 366966, at *3 (E.D. Tex. Feb. 16, 2005) (transfer denied where other court "merely construed two terms found in one of the four patents at issue"); *SmithKline Beecham Corp. v. Geneva Pharms., Inc.*, No. 99-cv-2926, 2000 WL 217642, at *2 (E.D.Pa. Feb. 11, 2000) (transfer denied where different products and additional patents were at issue).  Transfer should similarly be denied here.

III.     **CONCLUSION.**

For the forgoing reasons, Quad/Tech respectfully requests that QI's Motion to Dismiss or Transfer be denied in its entirety.

Respectfully submitted,

Dated:  October 15, 2010          THE BERNSTEIN LAW GROUP, P.C.
                                  MCSHEA\TECCE, P.C.


By:          /s/
             Frederick A. Tecce
Attorneys for Plaintiff Quad/Tech Inc.

15

**Quad/Tech Inc.'s Opposition to Defendant QIPC-NA's**
**Motion to Dismiss or Transfer**
**(continued)**


**<u>Attestation of Concurrence</u>**


I, Marc N. Bernstein, as the ECF user and filer of this document, attest that concurrence in the filing of this document has been obtained from Frederick A. Tecce, the above signatory.


Dated:  Oct. 15, 2010                              _____/s/_____
                                                                    Marc N. Bernstein