DAVID LANGFITT (admitted *pro hac vice*)
DLangfitt@lockslaw.com
LOCKS LAW FIRM
The Curtis Center, Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Telephone: 215.893.3423 / Facsimile: 215.893.3444

ROBERT R. AXENFELD (*pro hac vice* forthcoming)
RAxenfeld@mmwr.com
JO ROSENBERGER ALTMAN (*pro hac vice* forthcoming)
JRosenberger@mmwr.com
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109
Telephone: 215.772.1500 / Facsimile: 215.772.7620

MARC DAVID PETERS (CA SBN 211725)
MDPeters@mofo.com
JAMIE HARUKO KITANO (CA SBN 268078)
JKitano@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600 / Facsimile: 650.494.0792

Attorneys for Defendant
Q.I. PRESS CONTROLS NORTH AMERICA LTD., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| QUAD/TECH INC., a Wisconsin corporation,<br><br>Plaintiff,<br><br>v.<br><br>Q.I. PRESS CONTROLS B.V. of the Netherlands,<br><br>and<br><br>Q.I. PRESS CONTROLS NORTH AMERICA LTD., INC., a Rhode Island corporation,<br><br>Defendants. | Civil Action No.: CV 10-2243 (CRB)<br><br>**DEFENDANT QIPC-NA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER**<br><br>Date:   November 5, 2010<br>Time:   10 a.m.<br>Dept.:  Courtroom 8, 19th Floor<br>Judge:  Honorable Charles R. Breyer<br><br>JURY TRIAL DEMANDED |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Quad/Tech's Opposition shows that this suit seeks to circumvent Judge Robreno's orders denying Quad/Tech leave to amend its infringement allegations in the Eastern District of Pennsylvania and denying Quad/Tech's request to lift the stay of the Pennsylvania case pending Quad/Tech's interlocutory appeal.  The salient points on reply are these:

(1)     Quad/Tech failed timely to assert infringement of U.S. Pat. No. 5,412,577 ("the '577 patent") by the IDS in Pennsylvania and failed to meet Rule 15's extremely liberal standard to add that claim by amendment.  The related doctrines of *res judicata* and claim splitting mean that Quad/Tech may not later file the *same* infringement assertion in a *second* district court.

(2)     Quad/Tech's allegations in the two cases arise from the same nucleus of operative fact.  As part of the same commercial transaction, Manroland (a German printing press manufacturer) included **both** the IDS and the mRC with micro marks (the mRC+$^{TM}$) for use in the printing press it sold to Transcontinental for use in its Fremont facility.  Although the California case involves two patents and the Pennsylvania case only one, both cases involve the IDS and the '577 patent and all of the infringement claims arise from same transaction.

(2)     QIPC's Pennsylvania counterclaim for non-infringement of any claim of the '577 patent means Pennsylvania is the first-filed case for *any* allegation of infringement of the '577 patent, which makes the California case a second-filed case that should be dismissed.

(4)     If the case is to proceed, it would be substantially more convenient for the case to proceed in the Eastern District of Pennsylvania.  Judge Robreno is already familiar with the parties and the issues; he has dealt with claim construction and infringement in association with a fully briefed and argued motion for a preliminary injunction.  A second court need not accept the idea that that investment in Judge Robreno's time and attention should be lost.  Accordingly, this case should be transferred if it is not dismissed.

## II. QIPC-NA'S MOTION TO DISMISS SHOULD BE GRANTED.

### A. The California Case Arises From The Same Transaction And Occurrence As The Pennsylvania Case And Is Barred By The Doctrine of Claim Splitting.

*Biogenex Laboratories* squarely holds that Quad/Tech's assertion of the '577 patent in a second lawsuit is impermissible claim splitting. The facts are the same. Just like in *Biogenex*, Quad/Tech moved to amend its infringement contentions in its first lawsuit. Just like in *Biogenex*, Quad/Tech failed to meet its burden and its motion was denied. Just like in *Biogenex*, the Court should dismiss the second suit here, because it seeks to make the same infringement contention that Quad/Tech proposed in its motion to amend in Pennsylvania. *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, No. 05-860-JF, 2005 U.S. Dist. LEXIS 45405, at *8-9 (N.D. Cal. Aug. 5, 2005); *see also Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) ("[T]he fact that plaintiff was denied leave to amend does not give [it] the right to file a second lawsuit based on the same facts.") (citation omitted).

That Quad/Tech moved to amend its Pennsylvania pleading to include an infringement allegation against the IDS is an acknowledgement that that allegation belongs in the Pennsylvania case. The reason that Quad/Tech will not be permitted to pursue it in Pennsylvania is ***not*** because it is a different claim, but because Quad/Tech failed to meet Rule 15's extremely liberal standard for amendment.[1]

Bringing the same claims based upon a single patent in two different actions is clear claim splitting. *Biogenex Labs.*, 2005 U.S. Dist. LEXIS 45405, at *8-9. The claim splitting rule is designed to prevent plaintiffs such as Quad/Tech from circumventing a trial court's denial of leave to amend their original allegations, *Adams*, 487 F.3d at 688, and is derived from the doctrine of *res judicata* and "borrow[s] the test for claim preclusion" to determine whether a second suit is duplicative of a first suit. *Id.* at 688-89. The law governing claim preclusion establishes that the assertion of the '577 patent in Pennsylvania is the same claim as the assertion

---

[1] The Rule 15 standard (leave to amend freely given when justice so requires) is easier to meet than the "good cause" standard for amending infringement contentions under the Patent Local Rules of the Northern District of California. *See* Patent L.R. 3-6.

of the '577 patent in California. Quad/Tech's argument that the cases are different because they are supposedly about different products is wrong; both claims involve the IDS and the '577 patent. The result is the same whether Ninth Circuit or Federal Circuit precedent is followed: both courts apply the Restatement (Second) of Judgments in claim preclusion questions, and the Federal Circuit held that it would "freely refer to precedent on issue and claim preclusion from both circuits." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 477 n.7 (Fed. Cir. 1991).

According to the Federal Circuit, the definition of a "'claim' rests on a particular *factual transaction or series thereof* on which a suit is brought." *Id.* at 479 (emphasis added). "What factual grouping constitutes a 'transaction' . . . [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (quoting Restatement (Second) of Judgments § 24). When the legal and factual issues are examined, it is clear that the two cases are based on the same transaction, form a convenient trial unit, and embody the same claim.

### 1. Quad/Tech's Attempt to Assert the '577 Patent a Second Time Should Be Dismissed.

Quad/Tech's claim against the IDS in California is nearly identical to the claim it unsuccessfully sought to bring in Pennsylvania. In Pennsylvania, Quad/Tech sought to allege:

> Defendants, acting alone or with others, are, and have been, infringing the claims of the '577 Patent by the continued manufacture, import, assembly, offer to sell, or sale of the mRC, IRS, and IDS color control and cut-off systems for presses and other devices within the United States without license from Quad/Tech, which product or products fall within the scope of one or more claims of the '577 patent.

Quad/Tech [Proposed] Second Amended Pennsylvania Complaint at ¶ 51 (Exhibit E). After Judge Robreno denied leave to amend, Quad/Tech filed this case in California and alleged:

> Defendants, acting alone or with others, are, and have been, directly infringing the claims of the '577 Patent by the continued manufacture, import, assembly, offer to sell, or sale of the IDS color control system for presses and other devices within the United States without license from Quad/Tech.

Quad/Tech First Amended California Complaint at ¶ 29 (Exhibit G).

It is not true that the California '577 patent infringement claims involve a separate legal right from the claims in Pennsylvania, and Quad/Tech argued to Judge Robreno that they did not. When Quad/Tech moved to amend its Pennsylvania complaint to allege infringement of the '577 patent by the IDS, Quad/Tech represented that the "Proposed Second Amended Complaint ***does not seek to add a new legal theory*** or defendants to this action—it simply seeks to expand Quad/Tech's *existing claims of patent infringement*." Quad/Tech Motion for Leave to File a Reply Brief in Support of its Motion for Leave to File a Second Amended Complaint at Exhibit A (Proposed Reply Brief at 1-2) (emphasis added) (attached as Exhibit H).[2]

The Court should ignore Quad/Tech's arguments about the California case being limited to patent claims dealing with camera positioning and not any dealing with registration control. (Quad/Tech Opposition at 1; Tecce Decl. at ¶ 6.)  Even though no such limitation is in Quad/Tech's First Amended California Complaint, the record shows that Quad/Tech alleged in the Pennsylvania case that the IDS infringed Claim 26 of the '577 patent, which allegedly addressed "a system controlling the position of the camera" and did "not require registration." *See* Quad/Tech Motion for Reconsideration of Judge Robreno's Memorandum Opinion and Order at 14 (Exhibit I).  So Quad/Tech alleged infringement of Claim 26 in both cases.

Quad/Tech's attempt to circumvent Judge Robreno's Orders in Pennsylvania is precisely the kind of forum shopping the claim splitting doctrine seeks to prevent. *See Adams*, 487 F.3d at 688.  If the California case moves forward, it will eviscerate Judge Robreno's Orders and create the risk of competing rulings and judgments concerning the '577 patent.

    **2.**     **Quad/Tech's Attempt to Assert the '508 Patent Should Be Dismissed Because It Is Based on the Same Transaction as the Assertion of the '577 Patent.**

Both the Pennsylvania and the California cases allege infringement arising from the same transaction: the sale of print control products for use at the Transcontinental newspaper printing facility in Fremont. That transaction included ***both*** the IDS and the mRC with micro marks (the

---

[2] "Exhibit __" refers to the exhibits to QIPC-NA's First and Second Requests for Judicial Notice and Declaration in Support Thereof.  In some cases, excerpted or redacted exhibits have been provided in order to respect the Protective Order entered in the Pennsylvania Case.

mRC+™). *See* Quad/Tech's Motion in Pennsylvania for Preliminary Injunction ("PI Motion") at 36-37 & Exhibit A (attached as Exhibit J) (alleging infringement based on a sale to "a newspaper in San Francisco" and which in relevant part includes a press release stating that Transcontinental San Francisco's press has 18 IDS systems and 18 mRC systems that run with micro marks); *see also* Quad/Tech's Opposition at 11 ("The events giving rise to the patent infringement claims in this case occurred exclusively in this forum — the sale of the IDS color density control system to Transcontinental in Fremont, California"). Thus, both the Pennsylvania and the California cases arise from the same transaction and nucleus of operative facts; i.e., Manroland's sale to Transcontinental of an IDS and an mRC+™ as components of a large Manroland printing press.

In the Pennsylvania case, Quad/Tech linked the IDS color control system and the mRC+™ together in its effort to obtain an injunction. Quad/Tech's Vice President declared that "customers for print control systems . . . prefer to purchase the register control, color control, and ribbon cutoff systems from a single source" and that "Q.I. will not sell its color control system [the IDS] without its register control system [the mRC+™]." Freeman Decl., PI Motion Exhibit D, at ¶¶ 73-74 (Exhibit J). Quad/Tech argued in Pennsylvania that "Q.I.'s efforts to sell its mRC system have caused harm directly to Quad/Tech and its ability to sell its . . . color control systems." PI Motion at 37 (Exhibit J). This parallels Quad/Tech's allegation in the California complaint: "Defendants' conduct has caused harm directly to Quad/Tech and its ability to sell its control systems." (Exhibit G at ¶ 25.) In fact, as an Exhibit to its Preliminary Injunction Motion Quad/Tech attached a press release and advertisement **concerning the IDS** that had been sold for use at Transcontinental. PI Motion at Exhibit A (Exhibit J). Moreover, Quad/Tech sought discovery in Pennsylvania concerning the IDS as well as the '577 patent generally, and presented expert testimony at the Preliminary Injunction Hearing that *the IDS infringed the '577 patent*. *See* Quad/Tech First Requests for Production of Documents at Requests 4, 6-8 (Exhibit K); Amd. Leininger Decl. at ¶¶ 7-8 (Exhibit L).[3]

---

[3] QIPC-NA's citation to this and other Declarations is to establish that certain evidence was submitted at the Preliminary Injunction Hearing in the Pennsylvania case and QIPC-NA asks that the Court take judicial notice of these Declarations for that purpose. It is not QIPC-NA's intent to rely on these Declarations to establish issues of fact that may, or may not, be contested.

According to Quad/Tech's own filings in Pennsylvania, factual questions regarding QIPC's mRC and IDS products are not separate issues, but are bound together. Quad/Tech should not now be heard to argue the opposite. Dismissal of this case is appropriate because the facts of this case and the facts of the Pennsylvania case are related in time, space, origin, and motivation; they form a convenient trial unit; and their treatment as a unit conforms to the parties' expectations or business understanding or usage. *Acumed*, 525 F.3d at 1324.

### 3. Quad/Tech's Case Authority Does Not Prevent Dismissal.

The cases cited by Quad/Tech do not compel a different result. *Kearns v. General Motors Corp.* held that "each patent asserted raises an independent and distinct cause of action." 94 F.3d 1553, 1555-56 (Fed. Cir. 1996). That is one reason why the assertion of the '577 patent in this case is the same as the assertion of the '577 patent in the Pennsylvania case. In *Kearns*, the plaintiff filed suit in the U.S. District Court for the Eastern District of Michigan, asserting infringement of five patents. *Id.* at 1554. The Michigan case was dismissed under Rule 41(b), which acted as an adjudication on the merits. *Id.* at 1555. The plaintiff then filed suit in the U.S. District Court for the Eastern District of Virginia, asserting the same five patents he asserted in Michigan as well as sixteen additional patents. *Id.* at 1554. The trial court dismissed the case, and the Federal Circuit affirmed the dismissal as to the five patents that had been asserted in the first suit, because the dismissal was *res judicata* with respect to those patents. *Id.* at 1556-57. The judgment in the Pennsylvania case, when rendered, will be *res judicata* with respect to the '577 patent, so the patent should be dismissed from the California case.

*Acumed* does not prevent dismissal of this case. In the *Acumed* case, the patent owner *obtained* permission to add a claim of infringement based on a *new* product, but elected to assert the claim in a second case to avoid delaying the trial in the first case. *Id.* at 1322. In Quad/Tech's case, the patent owner *failed* to obtain permission to add a claim of infringement based on an *old* product, one that had been sold in the U.S. for six years before Quad/Tech filed suit. Quad/Tech Motion for Leave to File a Reply Brief in Support of its Motion for Leave to File a Second Amended Complaint at Exhibit A (Proposed Reply Brief at 8) (Exhibit H). Unlike *Acumed*, in which different transactions gave rise to the alleged infringement, *id.* at 1322, in

QIPC-NA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER
Civil Action No.: CV-10-2243 (CRB)
pa-1429288

6

Quad/Tech's case, a *single* transaction gives rise to both the Pennsylvania and the California lawsuits—the German company Manroland's sale of the IDS and the mRC+™ to Transcontinental in Fremont.

### B. The California Case Should Be Dismissed Because It Is Substantially Similar To The Pennsylvania Case Under The First-To-File Rule.

The first-to-file rule serves the purpose of promoting efficiency and should not be disregarded lightly. *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 957 (N.D. Cal. 2008) (citing *Pacesetter Sys., Inc. v. Medtronic Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982)). A court of second filing will defer to a court of first filing, if the two matters before them exhibit chronology, identity of parties, and similarities of issues. *Id.* at 957. The issues *need not* be identical—the first-to-file rule is satisfied by a *sufficient* similarity of issues. *Id*. at 959. The test of sufficient similarity simply asks whether (1) the two pending actions are so duplicative or involve substantially similar issues that one court should decide the issues, and (2) which of the two courts should resolve the case? *Id.* at 959-60. Substantial overlap is sufficient; the issues need not be identical to allow one court to decide the action. *Id.* at 960.

The logic of *Intersearch* holds that this case is the second-filed case and should be dismissed. With respect to chronology, the Pennsylvania case was filed almost one year before the California case. With respect to the parties, there is complete identity: in both cases, Quad/Tech is the plaintiff, and QIPC-NA and QIPC-BV are the named defendants. With respect to the issues, they are substantially similar—both cases concern QIPC products delivered to Transcontinental in Fremont as part of the same commercial transaction. Both cases concern issues of infringement, validity, and claim construction of the '577 patent. Thus, there is a substantial risk of duplicative effort and inconsistent results between the two cases. Even though one case includes the '508 patent and the other does not, there is still substantial overlap between them, and the California case should be dismissed in favor of the Pennsylvania case.

QIPC-NA's claim for declaratory judgment of non-infringement in the Pennsylvania case shows that dismissal is the right result. QIPC-NA sought a declaration, alleging that the "QIPC Defendants have not infringed, directly or indirectly, willfully or otherwise, any valid and

1 enforceable claim(s) of the '577 Patent, either literally or under the doctrine of equivalents."
2 QIPC's Answer to First Amended Pennsylvania Complaint at ¶ 104 (Exhibit D).  That embraces
3 *any* claim for infringement of the '577 patent that Quad/Tech may make in the California case.
4       Quad/Tech protests against the first-to-file rule by arguing it should not be "chained" to
5 stayed litigation in Pennsylvania.  (Quad/Tech Opposition at 9-10.)  If that is a problem, it is one
6 entirely of Quad/Tech's making.  Quad/Tech chose Pennsylvania, Quad/Tech chose to seek a
7 preliminary injunction when it was not likely to succeed on the merits, Quad/Tech chose to seek
8 interlocutory review of the denial of that injunction, and Quad/Tech chose not to plead allegations
9 of infringement by the IDS in a timely manner.  Under those circumstances, is it any surprise that
10 Judge Robreno denied the motion to amend and stayed the case pending resolution of the appeal?
11 That is sound case management.

12       **C.    In The Alternative, The Factors Weigh In Favor of Transferring This Case.**
13       If this Court chooses not to dismiss the case, the relevant factors under 28 U.S.C.
14 § 1404(a) favor transferring this case to Pennsylvania.  The decision to transfer the case lies
15 within the Court's discretion.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000).
16       As explained in QIPC-NA's opening brief, the chronology of the two cases does not lend
17 itself to the conclusion that this case could only have been filed here.  *See Alexander v. Franklin*
18 *Res., Inc.*, No. 06-7121 SI, 2007 U.S. Dist. LEXIS 19727, at *11 (N.D. Cal. Feb. 14, 2007)
19 ("[T]he Ninth Circuit has established that courts should disregard a plaintiff's forum choice where
20 the suit is a result of forum-shopping.  One could reasonably infer forum shopping here, where
21 the same plaintiff represented by the same law firm filed a similar lawsuit in New Jersey, and
22 after receiving unfavorable rulings from that court, filed the instant case.") (citation omitted).
23       At this point, Pennsylvania is clearly the more convenient forum, as discussed in QIPC-
24 NA's opening papers.  The difficulties and effort involved in claim construction alone is
25 sufficient to transfer the case.  Quad/Tech concedes, as it must, that the claim term "image," the
26 construction of which has been briefed, construed, and appealed in the Pennsylvania case, appears
27 in the patent claim that it seeks to assert in California.  Tecce Decl. at ¶ 9.  In fact, most of the
28 terms in that claim have been addressed in Pennsylvania:  the bolded and underlined-claim terms

below identify those terms in Claim 26 of the '577 patent with constructions requested and argued by Quad/Tech in the extensive briefing, oral argument, and live-expert testimony before Judge Robreno in the Eastern District of Pennsylvania:

> 26. A system for positioning an **imaging device** relative to a printed **image** along at least one axis of the **image**, where the device is positioned by a positioning unit and the assembly scans an area of the printed **image**; the system comprising:
>
> a **memory** which stores a **reference array** of **digital data representative** of a predetermined **color** density of a **color** in **at least a portion** of the printed **image**, where the **imaging device** is in optical communication with the **image** and **produces** an **analog signal representative** of the **color** of an **area of the portion**;
>
> a **converter circuit**, operatively associated with the **imaging device**, which **converts** the **analog signal** to a **color array** of **digital data**, and **stores** the **color array**; and
>
> a **processing circuit** and **memory**, the **processing circuit** further comprising a density conversion circuit which **converts** the **color array** into a density **array** of **digital data representative** of the **color** density of the **color**, where the **processing circuit compares** the **reference** and density **arrays** to **determine** a spatial relationship between the **area** and **the portion** along one axis and **produces** a control **signal**, based upon the spatial relationship, to control the positioning unit.

'577 Patent, col. 22, lines 31-57 (Exhibit A to Quad/Tech's First Amended California Complaint); Quad/Tech Reply Brief in Support of Motion for Preliminary Injunction at i, ii and Exhibit E (attached as Exhibit M). Quad/Tech asked the Pennsylvania court to construe twenty different terms, and they appear throughout the '577 patent. *Id.*

Furthermore, the Pennsylvania court has received substantial evidence regarding the Transcontinental transaction, and Quad/Tech has presented expert testimony concerning the IDS. *See* Amd. Leininger Decl. at ¶¶ 7-8 (Exhibit L); Quad/Tech Proposed Findings of Fact and Conclusions of Law at ¶ 80 (Exhibit N); van Holten Decl. at ¶¶ 25-29 (Exhibit O); Ferron Decl. at ¶¶ 24-26 (Exhibit P). Pennsylvania is also more convenient because Quad/Tech's total failure to take any steps in the last five months to effectuate service of process through the Hague Convention on QIPC-BV (a Dutch corporation) will cause extensive procedural disruption in California—a non-existent problem in Pennsylvania.[4]

---

[4] Quad/Tech's allegation that QIPC-BV is "avoiding service of process here" is offensive. QIPC-BV isn't "here"—it is a Dutch corporation *with no presence in California*. Quad/Tech has known since filing suit in May that Rule 4 requires service under the Hague Convention, but so far has not begun to carry out the requirements of the treaty.

1  The argument that this case could not have been brought in Pennsylvania is nonsense, and shows the lengths to which Quad/Tech will go to avoid Judge Robreno. When Quad/Tech's counsel filed a motion for leave to file a Second Amended Complaint in Pennsylvania, that pleading contained **both** an allegation of infringement against the IDS and the allegation that "Q.I. [QIPC-NA and QIPC-BV] is subject to jurisdiction in this judicial district [the Eastern District of Pennsylvania] and is therefore deemed to reside here . . . ." Quad/Tech Proposed Second Amended Pennsylvania Complaint at ¶ 6 (Exhibit E). Under Rule 11, the filing of that motion constituted Quad/Tech's counsel's certification that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] the claims, defenses, and other legal contentions are warranted by existing law . . . [and] the factual contentions have evidentiary support . . . ." Something must have gone very wrong for Quad/Tech's counsel to contradict himself and present to this Court a motion and a declaration under penalty of perjury asserting that QIPC-NA is *not* subject to jurisdiction in the Eastern District of Pennsylvania.

In any event, Pennsylvania would have jurisdiction over this case, because, given the existing litigation there, there is at a minimum supplemental jurisdiction under 28 U.S.C. § 1367. The statute "confers supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the 'same case or controversy' requirement is satisfied." *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003). That requirement is satisfied where the claims involve "a common nucleus of operative fact." *Id*. (holding that the court had supplemental personal jurisdiction to address other patent claims). The claims in the California case focus on the IDS, but they arise out of a common nucleus of operative fact, the same alleged sales that Quad/Tech relies on in the Pennsylvania Case. *See infra* pp. 2 to 6.

### III. CONCLUSION

For all of the foregoing reasons, QIPC-NA requests that the Court dismiss the First Amended Complaint. In the alternative, it requests that the Court transfer the case to Judge Eduardo C. Robreno in the Eastern District of Pennsylvania.

QIPC-NA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER
Civil Action No.: CV-10-2243 (CRB)
pa-1429288

10

Respectfully submitted,

Dated: October 22, 2010

By: /s/ Marc David Peters
    MARC DAVID PETERS

MORRISON & FOERSTER LLP
Marc David Peters (CA SBN 211725)
Jamie Haruko Kitano (CA SBN 268078)
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
MDPeters@mofo.com
JKitano@mofo.com

and

David D. Langfitt
Locks Law Firm
601 Walnut Street, Suite 720 East
Philadelphia, PA 19106
Telephone: (215) 893-3423
dlangfitt@lockslaw.com

and

Robert A. Axenfeld
Jo Rosenberger Altman
Montgomery, McCracken,
   Walker & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
Telephone: (215) 772-1500
raxenfeld@mmwr.com
jaltman@mmwr.com

*Counsel for Defendant*

**Q.I. Press Controls North America Ltd., Inc.**